Roy D. BARKER, Rosa Joan Barker, Edward S. Carpenter, and Jean B. Carpenter, Plaintiffs-Appellees,

v.

Robert E. JEREMIASEN and Marilyn N. Jeremiasen, Defendants-Appellants.

No. 81CA0400.

Colorado Court of Appeals, Div. III.

Jan. 5, 1984.

Dean, Martin, Mitchell & Schwartz, Daniel W. Dean, Fort Collins, for plaintiffs-appellees.

Hammond, Clark & White, Gregory A. White, Loveland, for defendants-appellants.

STERNBERG, Judge.

The defendants, Robert E. and Marilyn N. Jeremiasen, appeal a judgment which imposed a mandatory injunction against their horse operation and awarded general damages to plaintiffs, Roy D. and Rosa Barker, and Edward S. and Jean B. Carpenter. We affirm in part and reverse in part.

The defendants and the Barkers and the Carpenters each own five and one-half acre tracts of land, with the defendants' tract located between the plaintiffs' land. In July 1969, the defendants, the Barkers, and Dennis Collard, the Carpenters' predecessor in title, purchased the property from one Marcum. At that time an agreement (Marcum Agreement) was entered into and recorded. It provided that the property was to be used for single residential purposes and that the property as a whole was not to contain more than 20 head of livestock, or 300 poultry.

Protective covenants, which had been signed by Robert Jeremiasen, Roy Barker, and Dennis Collard, were recorded in January 1970. They provided that "no noxious or offensive activities shall be carried on or upon any lot, nor shall anything be done therein which may be or become an annoyance or nuisance to the neighborhood." It was also stated that "no lot shall be used or maintained as a dumping ground for rubbish. Trash, garbage or other waste shall not be kept, except in sanitary containers." The covenants were to run with the land, and were binding upon all parties, and persons claiming under them, for a period of 25 years from the date they were recorded and then were automatically extended for successive 10-year periods unless a majority of the lot owners changed them in writing. The covenants incorporated the Marcum Agreement to the extent the terms of that agreement did not conflict.

In 1974, the Carpenters purchased the parcel owned by Collard and received a warranty deed which was subject to the protective covenants. The defendants and the Barkers built single-family residences on their parcels between 1970 and 1971, and the Carpenters built their home in 1975.

In 1970, the defendants began to raise horses on their portion of the property. They began improvements with the construction of two buildings in 1973, and added additional structures in 1974, 1976, and 1977. They began the breeding of horses on the property in 1974. From 1974 through 1980, not less than 10 and as many as 19 horses were kept on the property at a time.

In September 1978, the plaintiffs complained to the defendants about the horse operation, and filed a complaint for a permanent injunction and damages in July 1979. The plaintiffs filed a motion for a preliminary injunction, which was denied in September 1980. Following a non-jury trial in January 1981, the court issued a permanent injunction which restrained defendants from maintaining more than four head of livestock on their land at any time, and awarded general damages ($3,000 to the Barkers and $4,000 to the Carpenters).

I.

The defendants first argue that plaintiffs' cause of action should have been barred by the applicable statute of limitations. We disagree.

■ The defendants offer two alternate arguments regarding the statute of limitations. They first contend that plaintiffs' cause of action arose prior to July 1, 1972, and was thus barred by the statute of limitations contained in C.R.S.1963, 118–8–4, which provided that all actions to enforce the terms of any restriction concerning real property must be commenced within one year from the date of the violation. Because this action was not filed until July 1979, defendants argue that statute of limitations barred recovery. The statute was amended in 1972 and is now § 38–41–119, C.R.S.1973 (1982 Repl.Vol. 16A). The provision regarding the enforcement of any restriction concerning real property has been eliminated.

Alternatively, defendants argue that if the plaintiffs' cause of action is construed

as having accrued *after* July 1, 1972 (thus eliminating the applicability of § 118–8–4) but before July 1, 1976, the cause of action is barred by the statute of limitations contained in § 13–80–107, C.R.S.1973, which provides that all personal actions on any contract, subject to limitations not relevant here, shall be brought within three years after the cause of action accrues.

The defendants assert that this statute would control the breach of covenant action. They argue that the record establishes that the protective covenants were violated in 1974, and thus, this action, not filed until July 2, 1979, was barred by this three-year statute of limitations. We disagree.

It is undisputed that the covenants imposed a continuing obligation upon the defendants, the Barkers, and the Carpenters to refrain from certain activities upon their land for a period of at least 25 years. It is also undisputed that as of the date of trial, defendants were conducting a horse operation upon their property. There was extensive testimony that the horses created much noise, causing a loss of sleep by plaintiffs, and also created noxious odors, which interfered with plaintiffs' quiet enjoyment of their residences as contemplated by the protective covenants and the Marcum Agreement. From this evidence, the trial court concluded that the horse operation constituted "a noxious and offensive activity, and unsanitary maintenance of rubbish, trash or garbage, and an annoyance and nuisance to the neighborhood all in violation of the Protective Covenants."

■ We agree with the trial court that defendants' horse operation resulted in repeated and successive breaches of the continuing protective covenants which continued until the date of trial. Thus, the statute of limitations, § 13–80–107, does not bar this action for breach of covenant. *Cf. Indian Territory Illuminating Oil Co. v. Rosamond*, 120 P.2d 349 (Okla.1941); *Airco Alloys Division v. Niagara Mohawk Power*, 76 A.D.2d 68, 430 N.Y.S.2d 179

(N.Y.App.Div.1980); *Sims v. Falvey,* 234 S.W.2d 465 (Tex.Civ.App.1950); 54 *C.J.S. Limitations of Actions* § 151 (1948).

However, we conclude that any damage claim for a breach which occurred before July 2, 1976, three years prior to the date this action was filed, was barred by § 13–80–107, which requires personal actions on contracts to be brought within three years after the cause of action accrues. There is no indication in the record as to what portion of the damages awarded may relate to damages incurred outside the three years prior to the filing of the suit. Thus, we must remand to the trial court to determine the amount of damages to be awarded.

### II.

The defendants also contend that they established a prima facie case for the application of the affirmative defenses of waiver and estoppel. They contend that they began erecting improvements on the property beginning in 1973, that the improvements continued until 1977, and that plaintiffs' delay in filing an action until July 2, 1979, was "clearly unreasonable in light of all the surrounding circumstances." We disagree.

The plaintiffs did not bring the action because buildings constructed by defendants violated the covenants; they brought the action because of the horse operation conducted in conjunction with the buildings. The buildings themselves could have housed operations that were neither noxious nor offensive and thus, not violative of the covenants.

Waiver is the intentional relinquishment of a known right. *Lone Pine Corp. v. Fort Lupton,* 653 P.2d 405 (Colo.App. 1982). The right must be known by competent persons to exist, and any waiver thereof must be done with the intent that such right shall be surrendered and such persons be forever deprived of its benefits.

*Colorado Bank & Trust Co. v. Western Slope Investments, Inc.,* 36 Colo.App. 149, 539 P.2d 501 (1975). There must be a clear, unequivocal and decisive act of the party showing such a purpose. *Colorado Bank, supra; Hall v. Beymer,* 22 Colo.App. 271, 125 P. 561 (1912).

The elements of estoppel as it relates to the right to enforce a covenant are: full knowledge of the facts; unreasonable delay in the assertion of available remedy; and intervening reliance by and prejudice to another. *Manor Vail Condominium Ass'n v. Vail,* 199 Colo. 62, 604 P.2d 1168 (1980); *Herald Co. v. Seawell,* 472 F.2d 1081 (10th Cir.1972). The plaintiffs testified to specific complaints about the operations made to the defendants commencing at the time of construction of the first structure. In spite of these complaints the operations not only continued, but were increased in scope. And, with regard to the element of reliance, the defendants testified that they did not consider their use of the property to be in violation of the Marcum agreement or of the covenants. Thus, logically it cannot be said they constructed additional buildings because the plaintiffs failed to act; rather defendants did so on the basis of their belief they were not violating the agreement or the covenants. Consequently, we agree with the trial court's conclusion based on the facts before it that the affirmative defenses had not been established.

The judgment is affirmed as to the granting of the injunction, but the cause is reversed as to the amount of damages awarded, and is remanded for a redetermination of damages.

TURSI and BABCOCK, JJ., concur.