Stephen S. THOMAS, et ux.,
Appellants,

v.

Gregory B. THOMAS, et al., Appellees.

No. 07–87–0278–CV.

Court of Appeals of Texas,
Amarillo.

March 22, 1989.

Rehearing Denied April 25, 1989.

Maston C. Courtney, Culton Morgan Britain & White, Amarillo, for appellants.

David E. Holt, Waters Holt Fields & Waters, Pampa, for Thomas appellees.

Anthony W. Benedict, Joe Cochran, Susan L. Heady, Amarillo, William Paul and John L. Williford, Bartlesville, Okl., for Phillips Petroleum.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Stephen S. Thomas and his wife, Barbara Ann Thomas, appeal from the trial court's judgment rendered in favor of Gregory B. Thomas, Robert T. Thomas, Joan Thomas Phelps, and Jeanne Thomas Cole, appellees. By that judgment, the trial court determined that appellees owned the free gas interest created in that certain oil and gas lease dated 2 May 1938, by and between J.N. Duncan and his wife, Gatsy Duncan, as lessors, and Phillips Petroleum Company, as lessee, covering the north one-half of section 155, in block B–2, H & GN R.R. Co. Survey, Gray County, Texas. In the trial court, Phillips was a party defendant; on appeal, they join appellees. We conclude that the free gas clause in question is a covenant running with the surface estate owned by appellees. We affirm.

Appellants challenge the trial court's judgment by five points of error. By their first and second points of error, appellants claim the trial court erred: (1) by concluding as a matter of law that the principal dwelling entitled to free gas under the lease was appellees' farm house because the evidence conclusively established the contrary (*i.e.*, that appellants' house is the only one continuously occupied and continuously receiving gas after 1980); and (2) by failing to construe "principal dwelling" as meaning a house currently being used as a dwelling.

By their third point of error, they claim, in the alternative, that if their construction of the free gas provision is not the only reasonable construction, then the provision is ambiguous and the trial court erred by failing to find that the intent of the parties to the lease was that free gas be provided to whichever house is currently being used as a dwelling. By their fourth and fifth points of error, appellants maintain that the trial court erred in rendering judgment for appellees because as a matter of law appellees' claim to the free gas is barred by applicable statutes of limitations; and, by failing to find that appellants made a good faith change of position to their detriment in reliance on the appellees' delay in asserting their rights to the use of the free gas. Appellants' points of error do not present reversible error.

The record shows that on 2 May 1938, the Duncans, as lessors, executed an oil, gas and mineral lease in favor of Phillips, as lessee, covering the north one-half of section 155, block B–2, H & GN R.R. Co. Survey, Gray County, Texas. In addition to the usual one-eighth royalty reserved to lessor, the lease also provided, in paragraph 3, that:

> Lessor shall have the privilege at his risk and expense of using gas from any gas well on said land for stoves and inside lights *in the principal dwelling thereon* out of any surplus gas not needed for operations hereunder. [emphasis added]

All of section 155 has been pooled for the production of gas. The Duncan lease has been perpetuated by production from a unit known as the Gatsy # 1 well located in the approximate southeast corner of the northwest quarter of section 155.

When the oil, gas and mineral lease was executed in 1938, the Duncans were then the owners of the surface and mineral estate in all of the north one-half of section 155. After 2 May 1938, the Duncans conveyed the surface and one-half of the oil, gas and minerals in the north one-half of section 155 to Yvonne Duncan Thomas Stroup and Jerry Thomas.

Later, Stroup and her husband conveyed their interest in the north one-half of section 155 to Jerry Thomas, reserving one-fourth interest in the minerals. Jerry Thomas and his wife, Patricia Thomas, were the parents of appellees, Gregory B. Thomas, Robert T. Thomas, Joan Thomas

Phelps, and Jeanne Thomas Cole, and appellant, Stephen Thomas. Upon the death of Jerry Thomas, his interest in the property passed to his wife, Patricia Thomas. Upon her death, the property passed to appellees and appellant Stephen Thomas.

In 1985, the Thomas heirs partitioned the surface estate of the north one-half of section 155. By that partition, appellant Stephen Thomas received sixty four acres out of the northeast corner of the northeast one-fourth of section 155, and appellees received the remaining acres in the north one-half of the section. Stephen's sixty-four acres included a one-acre tract of land which he previously had purchased from his mother on 20 November 1975.

When the oil and gas lease was executed on 2 May 1938 by the Duncans, there was no dwelling on the north one-half of section 155. The first dwelling was placed on the property in 1950 by Jerry and Patricia Thomas. That dwelling and the gas well are located on the portion of the north one-half of section 155 which is owned by appellees.

Jerry and Patricia Thomas began taking the free gas provided for in the oil and gas lease shortly after they placed their dwelling on the property in 1950. They continued to reside in the dwelling until their deaths (Jerry before 1975 and Patricia in 1980). Since Patricia's death the dwelling has been vacant except for approximately eighteen months in 1982–83 when the dwelling was rented to a tenant.

Appellants placed the second dwelling on the property after they purchased the one-acre tract from Patricia Thomas in 1975. That house burned and was replaced with a large dwelling (approximately 6,000 square feet). Appellants began taking gas for their dwelling in 1975. They took gas by connecting onto the pipeline system installed by Jerry and Patricia Thomas. After a dispute between Gregory and Stephen Thomas over the gas, Gregory disconnected Stephen's pipe connection from the original Thomas pipeline system. Later, Stephen made his own connection to the gas well; however, he never informed Phillips of his additional use of the gas.

A dispute arose among the Thomas heirs concerning the right to use the free gas. In 1986, after being informed of Stephen's use of the free gas, Phillips notified the Thomas heirs that the matter should be resolved by the parties. Phillips further informed the parties that under the clause, free gas would be limited to one dwelling and that the free gas could be used only for the purposes stated in the lease.

In an effort to resolve the dispute, appellees brought this action for a declaratory judgment and damages. Appellants cross-claimed for damages. Each party claimed the ownership of the right under the free gas clause. Appellees claim ownership by virtue of being successors in interest to the surface estate where Jerry and Patricia Thomas placed the first dwelling on the property in 1950. Appellants claim ownership of the free gas right by virtue of their ownership of the largest and only house presently occupied on the north one-half of section 155.

In essence, appellants claim that under the proper construction of the free gas clause the principal dwelling must be occupied to receive the free gas. Thus, they maintain the right to free gas at the original principal dwelling owned by Jerry and Patricia Thomas terminated at the death of Patricia and that the right to receive free gas attached to their house since it was the only occupied dwelling on the north one-half of section 155. We disagree.

 The parties stated in their respective briefs and our research reveals that this appeal presents matters of first impression in this jurisdiction. However, other jurisdictions have developed principles concerning similar free gas clauses in oil and gas leases which guide us to our determination in this case. It is the general rule, and the parties in this instance agree, that the free gas clause in the oil and gas lease is a covenant running with the surface estate of the property. *Jackson v. Farmer,* 225 Kan. 732, 594 P.2d 177, 181 (1979). The surface estate receives the benefits and the mineral estate has the burden. *Id.* Where, as here, the free gas clause is limited to the "principal dwelling,"

510 est by adverse possession. Thus, we conclude that the interest continues to be

that burden to the mineral estate cannot be extended to additional dwellings without the consent of the mineral estate owner. *Richardson v. Northwest Cent. Pipeline,* 241 Kan. 752, 740 P.2d 1083, 1087 (1987); *Stapleton v. Columbus Gas Transmission Corp.,* 2 Ohio App.3d 15, 440 N.E.2d 575, 579 (1981); *Warfield Natural Gas Company v. Moore,* 281 Ky. 689, 136 S.W.2d 1086, 1088 (1940). The right to take free gas under a free gas clause in an oil and gas lease is transferrable and assignable as is any other property interest. *Mobil Oil Corporation v. Brennan,* 385 F.2d 951, 953 (5th Cir.1967); *Jackson v. Farmer,* 594 P.2d at 181; 3 A. Summers, Oil & Gas, § 571. Likewise, the burden to the mineral estate is transferrable and assignable as is any other property interest. *Mobil Oil Corporation v. Brennan,* 385 F.2d at 953; *Jackson v. Farmer,* 594 P.2d at 181.

■ The settled general rule is that the right to free gas is construed as a covenant running with that portion of the land upon which the principal dwelling was located at the time the original lease was executed. *Warfield Natural Gas Co. v. Moore,* 136 S.W.2d at 1088; *Blair v. Sturgill,* 311 Ky. 622, 224 S.W.2d 928, 929 (1949). When there is no dwelling in existence on the leased premises at the time of the execution of the original oil and gas lease and a principal dwelling is placed on the premises years later, the right to receive the free gas attached to that portion of the surface estate where the dwelling is located. *Jackson v. Farmer,* 594 P.2d at 181.

■ In this instance, there was no dwelling in existence when the original oil and gas lease was executed in 1938. Jerry and Patricia Thomas placed the first dwelling on the property in 1950. That dwelling was the only dwelling on the property until 1975. At the time of trial, that dwelling remained on the surface estate owned by appellees.

■ The right to free gas under the oil and gas lease is an interest in real property. As an interest in real property, the interest can only be acquired or lost by the usual methods of transferring an interest

in real property. The usual method of voluntarily transferring an interest in real property is by gift, sale, or exchange. *Bruce v. Permian Royalty Co. No. 2,* 186 S.W.2d 686, 687 (Tex.Civ.App.—Galveston 1945, writ ref'd w.o.m.). Of course, an interest in real property may be acquired or lost by adverse possession under applicable statutes of limitations.

In this instance, there is no transfer of the free gas interest to appellants by appellees or their predecessors in title to the surface estate where the right attached to the property when Jerry and Patricia placed the original dwelling on the property. Also, we must point out that appellants do not claim they obtained the interest by adverse possession. Thus, we conclude that the interest continues to be owned by appellees as successors in interest to the surface estate where the principal dwelling was established in 1950 by Jerry and Patricia Thomas.

In summary, we overrule appellants' five points of error and each contention made under those points of error. The trial court's judgment is affirmed.