**UNIVERSAL RESOURCES CORPORATION, Plaintiff–Appellee,**

v.

**Raymond G. LEDFORD; Margaret J. Ledford; Philip S. Catalano; Sheryl L. Catalano; and David F.H. Ledford, Defendants–Appellants.**

No. 97CA0416.

Colorado Court of Appeals, Div. IV.

June 25, 1998.

**594**

Dugan & Abadie, Lon W. Abadie, Durango, for Plaintiff–Appellee.

Gary Lindsay, Durango, for Defendants–Appellants.

Opinion by Judge RULAND.

In this action for declaratory relief, defendants, Raymond G. Ledford, Margaret J. Ledford, Philip S. Catalano, Sheryl L. Catalano, and David F.H. Ledford, appeal from the summary judgment entered in favor of plaintiff, Universal Resources Corporation. We affirm.

In 1950, the owners of a 275–acre parcel of real estate signed an oil and gas lease covering the entire parcel. The lease granted to the owners "gas free of charge from any gas well on the leased premises for stoves and inside lights in the *principal dwelling* on said land . . . ." (emphasis supplied) In order to take advantage of the grant, the owner was obligated to install a pipeline from the dwelling to the well. However, no residence had been constructed on the parcel at the time the lease was signed.

A successor to the original lessee drilled a producing gas well on the parcel, the Mir # 1–31. Thereafter, approximately 200 acres of the parcel were conveyed to Jack and Joyce McEntire. The McEntires constructed a dwelling and installed a pipeline to take natural gas from the well to their residence.

In 1977, the McEntires conveyed approximately 40 acres of the parcel to Raymond and Margaret Ledford. The Ledfords constructed a dwelling on this parcel and tapped into the McEntire's gas line to obtain natural gas. The Catalanos, whose relationship to the Ledfords does not appear in the record, did likewise.

In 1991, a dispute arose between the Ledfords and the McEntires regarding ownership of the mineral rights underlying the Ledfords' parcel. The McEntires brought suit to quiet title, and the Ledfords and Catalanos named Amax Oil and Gas, Inc., as a third-party defendant because Amax was then the operator under the oil and gas lease. The Ledfords and the Catalanos claimed that Amax was wrongfully withholding royalties due them. They also claimed that the McEntires should be restrained from interfering with their use of free gas. That case

was resolved by a settlement agreement among the McEntires, the Ledfords, and the Catalanos. Amax was not a party to the settlement agreement, and it was dismissed as a party upon payment into the registry of royalties then due.

The following year, Amax transferred its interest in the lease to plaintiff. About one year thereafter, plaintiff discovered gas leaks in the Mir # 1–31 and shut it down. The McEntires then disconnected from the Mir # 1–31 and built a new gas line from their residence to another well. The Ledfords and Catalanos, however, demanded that plaintiff resume production from Mir # 1–31 and provide them with free gas.

Shortly thereafter, plaintiff brought this action seeking a declaration that neither the Ledfords nor the Catalanos had acquired any rights to take free gas from any wells located on the leased property. The parties filed cross-motions for summary judgment, and the court granted plaintiff's motion.

## I.

The Ledfords and Catalanos first contend that the court erred in concluding that they did not acquire rights to free gas pursuant to the McEntires' deed. Specifically, they argue that as owners of part of the surface estate and because the mineral estate under their acreage was also conveyed to them the right to free gas was included. We do not agree.

■ In addition to the rent and royalty payments given as consideration for an oil and gas lease, a lessee sometimes agrees to furnish free gas to the lessor for domestic use. 3A W. Summers, *Oil & Gas* §587 (2d ed. 1958). This benefit, commonly termed a "free gas clause," is deemed a covenant running with the land unless the benefit is limited to a named individual. *See Richardson v. Northwest Central Pipeline Corp.*, 241 Kan. 752, 740 P.2d 1083 (1987). Further, the rights under a free gas clause ordinarily may be transferred or assigned like other property interests. *See* W. Summers, *supra*, §571; *see also Thomas v. Thomas*, 767 S.W.2d 507 (Tex.App.1989).

■ If no specific beneficiary is designated to receive the natural gas, the rights arising from a free gas clause are generally characterized as a covenant which runs with the surface of the leased parcel and not as part of the mineral estate. *See* 3 H. Williams, *Oil & Gas Law* §661.2 (1997). The theory supporting this conclusion is that the surface owner's dwelling was presumptively the one to be benefited. *See Stapleton v. Columbia Gas Transmission Corp.*, 2 Ohio App.3d 15, 440 N.E.2d 575 (1981).

■ Moreover, if the free gas clause is limited to the "principal dwelling," the obligation to supply gas cannot be extended to additional dwellings without the consent of the lessee. *See Thomas v. Thomas, supra; see also Warfield Natural Gas Co. v. Moore*, 281 Ky. 689, 136 S.W.2d 1086 (1940) (lessor not justified in using gas to furnish heat and light for a tenant house built on the premises more than 30 years after the execution of the lease).

■ Here, the record confirms that the McEntire residence was the first dwelling built on the leased property. Accordingly, we hold that this residence qualifies as the principal dwelling. And, upon the McEntire's use of gas from Mir # 1–31 for that residence, the free gas clause became operative.

Neither the Ledfords nor the Catalanos acquired that dwelling or the land on which it is located in the conveyance of the 40–acre parcel. Nor did the McEntires' deed expressly transfer the benefit of the free gas clause to the Ledfords or the Catalanos.

Consequently, we agree with the trial court's analysis and conclusion that the right to free gas remained with the McEntire's dwelling.

## II.

In the alternative, the Ledfords and Catalanos in effect contend that plaintiff and its predecessors must be deemed to have waived any "one dwelling" restriction in the lease as a matter of law. In support, they point to the fact that more than one residence has been drawing gas from the McEntire's pipe-

line for almost 35 years. We are not persuaded.

■ Waiver is the intentional relinquishment of a known right. *Lone Pine Corp. v. City of Fort Lupton,* 653 P.2d 405 (Colo.App. 1982). To establish a waiver, there must be a clear, unequivocal, and decisive act of the party demonstrating the relinquishment. *See Barker v. Jeremiasen,* 676 P.2d 1259 (Colo.App.1984).

■ Here, there was no evidence that plaintiff or any of the prior operators under the lease knew that more than one dwelling was being supplied with gas until about November 1991 when the McEntires were temporarily restrained from interfering with defendants' use of gas from the McEntire pipeline. Further, the Ledfords and Catalanos failed to submit evidence of any affirmative act on behalf of plaintiff or its predecessors after that date suggesting a waiver of the one dwelling limitation as to them.

Under these circumstances, silence, standing alone, is insufficient. *See Heagy v. Steinmark,* 66 Colo. 200, 180 P. 93 (1919) (silence does not amount to the waiver of the performance of a condition unless that silence is inconsistent with any other explanation); *see also Haberl v. Bigelow,* 855 P.2d 1368 (Colo. 1993) (silence alone does not indicate a surety's consent to any change in a contract).

Accordingly, we agree with the trial court's ruling that no waiver has been demonstrated.

### III.

■ Finally, the Ledfords and Catalanos contend that the trial court erred in ruling that plaintiff's claim was not barred under the doctrine of *res judicata.* In support, they argue that plaintiff's claim should have been presented in the quiet title proceeding between them and the McEntires and that such claim is, therefore, barred. Again, we are not persuaded.

■ The doctrine of *res judicata* provides that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. *See Michaelson v. Michaelson,* 884 P.2d 695 (Colo.1994); *see also* Restatement (Second) of Judgments §37

(1982) (person denominated as the party having the proprietary or other enforceable interest in the subject matter of an action is bound by and entitled to the benefits of the rules of *res judicata* ). The doctrine not only bars issues actually decided, but also any issues that should have been raised in the first proceeding but were not. *City & County of Denver v. Block 173 Associates,* 814 P.2d 824 (Colo.1991).

■ However, an individual named as a defendant in an action is not bound by the judgment if the subject matter of the action involves an obligation other than that person's and that fact is known to the plaintiff. Restatement (Second) of Judgments, *supra,* comment f.

Here, plaintiff's predecessor, Amax, was a nominal party in defendants' earlier dispute with the McEntires. Amax's involvement was that of a lessee having a duty to pay royalties on mineral rights as determined in that litigation.

In addition, the Ledfords' and Catalanos' counterclaim against the McEntires and their third-party complaint against Amax focused on payment of royalties, and the prayer of the pleading requested judgment for the royalties. No specific request was included for determination of the right to free gas.

Next, Amax did not contest any party's claim to the mineral estate. Rather, Amax's concern was a determination as to the entitlement to lease royalties and rents.

Finally, Amax was not a party to the settlement agreement, and neither the agreement nor the judgment approving the agreement purports to address the obligation of Amax to supply free gas in any manner. *See Edwards v. Gifford,* 137 Tex. 559, 155 S.W.2d 786 (1941) (a party served but not appearing in a title proceeding who is not a party to the settlement agreement is not bound by the judgment).

Therefore, we find record support for the trial court's determination that plaintiff's predecessor in interest, Amax, was in effect a nominal party in the prior litigation and, hence, not precluded by *res judicata* from litigating the claim to free gas.

## IV.

Finally, we have considered and reject plaintiff's request for attorney fees and costs under C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

Judgment affirmed.

CASEBOLT and ROY, JJ., concur.