SETHI et al.

v.

ANTONUCCI, Appellant,

v.

FORTUNE GAS & OIL, INC., Appellee.

[Cite as *Sethi v. Antonucci* (1998), 126 Ohio App.3d 382.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97 C.A. 100.

Decided Feb. 18, 1998.

*Ralph E. Cascarilla* and *Vincent L. Cheverine*, for appellant.

*Mark A. Beatrice*, for appellee.

Cox, Judge.

This matter presents a timely appeal from a decision rendered by the Mahoning County Common Pleas Court, overruling the motion for summary judgment filed by defendant/third-party plaintiff/appellant, John M. Antonucci, and sustaining the motion for summary judgment filed by third-party defendant/appellee, Fortune Gas & Oil, Inc.

The material facts in this matter are not in dispute. On November 14, 1968, Mr. and Mrs. Emerson Libb entered into an oil and gas lease with Quaker State Oil Refining Corporation, which was duly recorded with the Mahoning County Recorder on December 2, 1968. Pursuant to certain subsequent assignments, appellee received all the rights and duties of the lessee to this lease. In April 1976, appellee placed a well into operation on the Libbs' real property, subject to the oil and gas lease. At the time appellee began to produce gas, the Libbs had a residence located upon their real property, and appellee connected the Libbs' residence to the well in order to provide free gas to the principal dwelling pursuant to the oil and gas lease.

In February 1989, Mr. Libb and his second wife had the real property that was subject to the oil and gas lease subdivided into various new parcels, including a new parcel having approximately 9.39 acres upon which the Libb residence receiving free gas was located. This particular parcel was sold to Joseph Fabian. A deed was executed on May 1, 1989 and was thereafter duly recorded on May 4, 1989. Two other parcels totaling approximately 58.96 acres were purchased by

appellant. The well that was subject to the oil and gas lease was physically located on one of appellant's parcels. The deed from the Libbs to appellant, executed on April 14, 1989 and duly recorded on April 20, 1989, did not provide for an easement or any other right of access across appellant's real property for the connection of the well to the Libb/Fabian residence.

The deed transferring the parcel to Mr. Fabian contained an express grant of the right to and use of limited free gas arising in the oil and gas lease. However, the deed to appellant made no reference whatsoever to the right to free gas. The purchase agreements executed by appellant and the Libbs for the two parcels of real property acquired by appellant and upon which the well was located contained the following language: "Limited Free Gas as long as available to go w/Parcel # 1A. Subject to an easement to use & maintain a domestic gas line to well for the enjoyment of the Buyer of 1A, their heirs and assigns."

On September 4, 1990, appellant filed an application for a zoning permit in order to construct a residence on the parcel of real property upon which the well was located. During construction of his residence in early 1991, appellant connected the residence to the well. Appellant then sold his residence to plaintiffs, V.K. and Usha Sethi, in early 1992. In reliance upon his belief that he was entitled to receive free gas, appellant signed a supplemental agreement with plaintiffs in May 1992 in which he promised to pay plaintiffs certain sums if the gas supply from the well was terminated during the ten years following the closing date of the purchase.

Plaintiffs filed a complaint against appellant on March 31, 1995, alleging that he breached their agreement when appellee discontinued gas service to their residence in January of 1994. Appellant answered plaintiffs' complaint and filed a third-party complaint against appellee on May 26, 1995, alleging that appellee breached the oil and gas lease at issue. Appellant also asserted that appellee should be liable to him, based upon the theories of indemnity and/or contribution, for any amount which he may have to pay plaintiffs pursuant to their agreement. Appellee filed its answer on September 6, 1995, denying liability and setting forth a counterclaim against appellant for the value of the gas which it alleged that appellant had converted.

On February 21, 1996, appellee filed a motion for summary judgment. Appellant filed a cross-motion for summary judgment on April 22, 1996. Both parties then filed briefs in opposition to the other party's motion. On March 7, 1997, the trial court filed its judgment entry overruling appellant's motion for summary judgment, sustaining appellee's motion for summary judgment, and entering judgment in favor of appellee in the amount of $8,632.60, plus interest and costs. Plaintiffs are not parties to the instant appeal, as their dispute with appellant was settled and their complaint was dismissed.

Appellant sets forth two assignments of error on appeal, for which his arguments are combined and which allege as follows:

"1. The Trial Court erred by granting Fortune's Motion for Summary Judgment dismissing the claims Antonucci asserted against Fortune in his Third–Party Complaint and overruling Antonucci's Cross–Motion for Summary Judgment.

"2. The Trial Court erred by granting Fortune's Motion for Summary Judgment entering judgment in Fortune's favor on its Counterclaim against Antonucci and overruling Antonucci's Cross–Motion for Summary Judgment."

Civ.R. 56(C) recites, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As set forth by the Ohio Supreme Court in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim." (Citations omitted.)

The Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274, held:

"The moving party cannot discharge its initial burden under Civ .R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims."

The Ohio Supreme Court in *Dresher, supra,* further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which that party bears the burden of production at trial. In

reviewing a trial court's decision to grant summary judgment, a court of appeals must conduct a *de novo* review of the record. *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 676 N.E.2d 151.

The determinative question in the case at bar is who should be entitled to the benefit of the free gas under the free gas provision of the oil and gas lease when that benefit runs with the land subject to the lease and the land is subsequently subdivided into several parcels. A free gas clause, limited to the principal dwelling, limits the right to receive free gas to only one house on the leased premises. *Stapleton v. Columbia Gas Transm. Corp.* (1981), 2 Ohio App.3d 15, 2 OBR 16, 440 N.E.2d 575. The court in *Stapleton* held that a free gas provision is a real covenant which runs with the surface ownership of the leasehold tract. Therefore, we must determine whether appellant/plaintiffs' house or the Libb/Fabian house was the principal dwelling entitled to the free gas under the oil and gas lease.

Appellant argues that the trial court failed to provide any reasoning for its conclusion that the grant of the right to the free gas in question, included in the Libb-to-Fabian deed, constituted an effective transfer of that right to the parcel of real property purchased by Fabian, upon which a dwelling was located.

Appellant maintains that appellee was required to provide free gas to the Libb dwelling only until the Libbs had the real property subdivided and sold in 1989. At that time, the surface tract containing the principal dwelling was sold to Fabian, while the surface tract containing the well itself was sold to appellant. Appellant contends that since a covenant runs with the surface tract, the right to the free gas transferred to him by deed recorded on April 20, 1989. However, as appellant did not construct a dwelling on his land until 1991 and that dwelling was not occupied until early 1992, he submits that appellee's obligation to provide free gas to his dwelling did not become effective until early 1992.

Appellant next complains that the trial court made no reference to any portion of the record in support of its conclusion that the Libbs intended to convey their right to free gas under the lease along with Fabian's parcel, nor did the trial court refer to the record in support of its conclusion that the Libbs' failure to reserve an express easement in appellant's deed for the transportation of gas to Fabian's residence did not alter the grant to Fabian of the right to free gas. Appellant believes that the trial court relied upon the purchase agreements from the Libbs to appellant in reaching its decision, since there was absolutely no reference to the Fabian parcel contained in appellant's deed.

Appellant states that pursuant to the doctrine of merger by deed, the purchase agreements in this case merged into his deed and ceased to exist separately by operation of law when the deed was recorded on April 20, 1989. See *37*

*Robinwood Assoc. v. Health Industries, Inc.* (1988), 47 Ohio App.3d 156, 547 N.E.2d 1019. Appellant's deed from the Libbs was silent with regard to the free gas provision; however, appellant asserts that since his deed was filed prior to Fabian's deed, Fabian had record notice that appellant granted him no easement by which to access the well. Appellant alleges that the trial court ignored the merger-by-deed doctrine and essentially held that the language of unrecorded purchase agreements controlled over a recorded deed.

Appellant further submits that since the trial court found that his deed from the Libbs contained no provision for an easement across his property, there was no legal right to transport the gas from the well to the Libb/Fabian dwelling on Fabian's parcel. Appellant therefore states that the trial court improperly concluded that the failure to reserve an express easement in appellant's deed for the transportation of gas to Fabian's residence did not alter the grant to Fabian of the right to free gas.

Appellant also argues that the language contained in the purchase agreements of all parties in question that referred to limited free gas as long as available to go with parcel 1A offered additional evidence of the fact that the former Libb dwelling was to receive the benefit of free gas until it was no longer the principal dwelling. Therefore, appellant urges that the trial court's interpretation of the deeds and purchase agreements in this case was contrary to law and the intent of the parties to the transactions.

Appellant mistakenly concludes that since the right to free gas pursuant to the oil and gas lease ran with the land, it somehow transferred to the parcel of land which he acquired. Clearly, appellant has ignored the dictates of *Stapleton,* 2 Ohio App.3d 15, 2 OBR 16, 440 N.E.2d 575, as well as the language in the Libb-to-Fabian deed.

The subdivision of real property in question occurred in 1989, and appellant took title to his parcels at that time. However, no dwelling existed on appellant's parcels until 1991. Appellant improperly proposes that his right to free gas simply jumped from the Fabian parcel to his parcel at the time his new dwelling became occupied in 1992. The Libbs deed to Fabian, which provided that "Grantors hereby grants [*sic*] to Grantee the limited rights and use to limited free gas as long as such is available," was an effective transfer of the right to free gas. It is not disputed that appellant's deed made no reference whatsoever to the right to free gas. However, the deed to Fabian contained an *express grant* of that right as aforementioned.

In *Stapleton, supra,* which all parties agree is the primary Ohio decision regarding free gas provisions, none of the deeds in question specifically referred to the right to free gas. However, one deed conveyed the tract of land, which included the dwelling currently receiving free gas under the oil and gas lease.

The court held that unless the right to free gas was excepted from the deed conveying the dwelling which was currently receiving the free gas, "the right to free gas passed under the deed provisions conveying all the privileges and appurtenances" to the parcel. *Stapleton,* 2 Ohio App.3d at 20, 2 OBR at 21, 440 N.E.2d at 579.

Thus, the court in *Stapleton* concluded that the right to free gas remained with the dwelling originally receiving the free gas, even though the dwelling was now owned by a party other than the original owner/lessor. *Stapleton* further provides that the terms and grants of a deed to a portion of leased land can effectively transfer the right to free gas. The *Stapleton* court did not bother to identify which parcel included the well in question and, therefore, clearly considered the location of the well to be irrelevant to its decision. The court in *Stapleton* also supported its determination that the right to free gas runs with the surface land, which includes the original dwelling receiving the free gas, by noting that the surface owner of the dwelling entitled to free gas is presumptively the one intended to be benefited.

In the case at bar, the deed to Fabian expressly transferred the right to free gas to his parcel, which included the dwelling originally receiving the free gas, and the trial court specifically referred to that express grant in rendering its decision.

Additionally, any implications that arise by the absence of an express easement for the transportation of the free gas to Fabian's parcel, along with the doctrine of merger by deed, are irrelevant to the true issue in this case. We agree with the trial court that the Libbs' failure to reserve an express easement in appellant's deed for the transportation of gas to Fabian's dwelling did not alter the intent shown by the grant of the right to free gas to the Fabian parcel. We further find that the language contained in the purchase agreements in question did not nullify the express grant of the right to free gas included in Fabian's deed, which express grant was relied upon by the trial court.

■■ Based upon appellant's own authority, the doctrine of merger by deed provides only that no cause of action continues to exist on a prior agreement once delivery and acceptance of a deed occur. See *37 Robinwood Assoc.,* 47 Ohio App.3d 156, 547 N.E.2d 1019. No additional easement was necessary in this case, given the language contained within the original oil and gas lease. Furthermore, in cases involving omitted easements, easements have been established by reformation of the deed. See *Phoenix Concrete, Inc. v. Reserve–Creekway, Inc.* (1995), 100 Ohio App.3d 397, 654 N.E.2d 155. Easements may also be established by implication. See *Renner v. Johnson* (1965), 2 Ohio St.2d 195, 31 O.O.2d 406, 207 N.E.2d 751.

Given the foregoing, we find that the trial court properly overruled appellant's motion for summary judgment, sustained appellee's motion for summary judgment, and entered judgment in favor of appellee as a result of appellant's conversion of the free gas in question for his own use.

Appellant's first and second assignments of error are found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.